## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYVANIA

| | | |
|---|---|---|
| RICHARD L. BAZELON and JONATHAN | : | CIVIL ACTION |
| D. SOKOLOFF, as CO-EXECUTORS of the | : | |
| ESTATE OF HARDIE BELOFF, | : | NO. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PACE GALLERY OF NEW YORK, INC. | : | |
| and PACE GALLERY LLC, | : | |
| Defendants. | | |

## COMPLAINT

Plaintiffs Richard L. Bazelon and Jonathan D. Sokoloff, as Co-Executors of the Estate of Hardie Beloff (the "Beloff Estate"), file this Complaint against defendants Pace Gallery of New York, Inc. and Pace Gallery LLC (collectively "Pace Gallery"), and aver as follows:

### THE PARTIES

1.      Plaintiff Richard L. Bazelon, Co-Executor of the Beloff Estate, is a citizen and resident of Pennsylvania.

2.      Plaintiff Jonathan D. Sokoloff, Co-Executor of the Beloff Estate, is a citizen and resident of Pennsylvania.

3.      On February 10, 2022, the Register of Wills for Delaware County, Pennsylvania, appointed Plaintiffs Richard L. Bazelon and Jonathan D. Sokoloff as Co-Executors of the Beloff Estate.

4.      Defendant Pace Gallery of New York, Inc. is a New York corporation with a principal place of business located at 540 West 25th Street, New York, New York.

5.      Defendant Pace Gallery LLC is a New York limited liability company that runs several art galleries, with a principal place of business located at 540 West 25th Street, New York,

New York.

6.    Pace Gallery of New York, Inc. and Pace Gallery LLC do business as "Pace Gallery."

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332. The parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    This Court has *in personam* jurisdiction over Pace Gallery, which regularly does business in Pennsylvania, including by consignment and sales of Louise Nevelson artworks.

9.    Venue is appropriate in this judicial district under 28 U.S.C.A. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the artwork that is the subject of this action is situated in this district.

## FACTS

10.    Pace Gallery for a period of time beginning in 1961, but not including the time of the events in this case to the present, represented the artist Louise Nevelson, and has exhibited and sold many Louise Nevelson artworks over the past 60 plus years.

11.    Louise Nevelson created a wall sculpture ("the Nevelson Wall Sculpture"), dated circa 1961 in the records of her estate, which artwork is now owned by the Beloff Estate.

12.    Louise Nevelson died on April 17, 1988.

13.    Under her Will, Louise Nevelson appointed her son, Myron (Mike) Nevelson as the sole executor of her estate.

14.    There was no provision in the Will giving Pace Gallery or its founder and then-President Arnold Glimcher ("Glimcher") any rights or authority with respect to artworks of Louise Nevelson.

2

15.     As explained below, the Nevelson Wall Sculpture was included in at least two appraisals of artworks by Louise Nevelson in the Estate of Louise Nevelson (the "Nevelson Estate").

16.     O'Toole-Ewald Art Associates, Inc. issued the first appraisal titled "In the Matter of the Tax Upon the Box and Wall Constructions By Louise Nevelson," dated November 5, 1990. The O'Toole-Ewald appraisal included the Nevelson Wall Sculpture and identified it as Inventory #30006 with an accompanying photograph. A copy of this photograph is attached hereto as Exhibit A.

17.     The Nevelson Wall Sculpture was included in a second appraisal of artwork in the Nevelson Estate, prepared by Glimcher on behalf of Pace Gallery (hereinafter, "the Glimcher/Pace Appraisal"). The Glimcher/Pace Appraisal was titled "Estate of Louise Nevelson, Fair market value appraisal of works by Louise Nevelson at date of death (April 17, 1988)," and dated July 8, 1993. At the time of the appraisal, Glimcher was the president of Pace Gallery. Relevant excerpts of the Glimcher/Pace Appraisal are attached hereto as Exhibit B.

18.     On information and belief, the Glimcher/Pace Appraisal was prepared for two purposes: (a) appraising the fair market value of artworks in the Estate for estate tax purposes and for submission to the Internal Revenue Service, and (b) establishing fair market value of the Nevelson Estate artworks for potential sales.

19.     In the Glimcher/Pace Appraisal, Glimcher stated, in relevant part:

I have reviewed the appraisals of certain works by Louise Nevelson prepared by O'Toole-Ewald Art Associates, Inc. and by the Art Advisory Panel of the Commisioner [sic] of the Internal Revenue Service.

I have also seen the works appraised or photographs of the works or am fully familiar with the works. … Reference should be made to the O'Toole-Ewald appraisal and the Art Advisory Panel appraisals for reproductions of the works and information about sales of other works by the artist.

3

Exhibit B, page 2.

20.     Inventory #30006, the Nevelson Wall Sculpture, was included in the Glimcher/Pace Appraisal. *See* Exhibit B at Section II, Box and Wall Constructions, page 1.

21.     The Glimcher/Pace Appraisal specifically considered whether each of the box and wall sculptures in the Nevelson Estate were complete, assembled "walls" by Louise Nevelson. The Glimcher/Pace Appraisal concluded that a number of the box and wall constructions in the Nevelson Estate were "simply a series of same size boxes stacked together for storage purposes rather than assembled by Mrs. Nevelson into 'walls'." (Emphasis added). The Glimcher/Pace Appraisal further described these works as "incomplete … and hav[ing] no aesthetic merit" and ascribed no value to these works. Exhibit B at Section II, Box and Wall Constructions, page 1.

22.     In stark contrast, the Glimcher/Pace Appraisal determined that the Nevelson Wall Sculpture was a complete wall assemblage by Louise Nevelson with an appraisal value of $85,000 as of April 17, 1988. Exhibit B at Section II, Box and Wall Constructions, page 1, at #30006.

23.     In 1996, Hardie Beloff purchased the Nevelson Wall Sculpture, then in Connecticut, from the Nevelson Estate, and the artwork was installed in the Beloff residence in Delaware County, Pennsylvania, where it remained until after his death on January 24, 2022.

24.     In connection with Hardie Beloff's purchase of the Nevelson Wall Sculpture from the Nevelson Estate in 1996, Mike Nevelson, as executor of the Nevelson Estate, gave Mr. Beloff a transparency of the artwork. A copy of this transparency is attached hereto as Exhibit C.

25.     The transparency of the Nevelson Wall Sculpture given to Hardie Beloff by Mike Nevelson depicts the same sculpture shown in the photograph of Inventory #30006 in the O'Toole-Ewald Appraisal, which is incorporated by reference in the Glimcher/Pace Appraisal. Compare Exhibit A hereto with Exhibit C hereto.

26.     On September 11, 1998, Mike Nevelson, as executor of the Nevelson Estate,

provided to Hardie Beloff a certificate which stated as follows:

> This document certifies that the black painted wood sculpture consisting of 14 boxes:
>
> Estate Control # 30006
>
> > Untitled, c. 1961
> > wood painted black
> > 86 x 108 3/16 x 13 1/4"
>
> is a work of art by Louise Nevelson and was included in the Estate of Louise Nevelson following her death, April 17th, 1988.
>
> This sculpture was erected in "the red room", third (3) floor of 29 Spring Street. The "red room" was located opposite the kitchen.

27.    Purchasers of Louise Nevelson wall sculptures from the Nevelson Estate rightfully relied on the Nevelson Estate for provenance and confirming authenticity.

28.    Following their appointment as Co-Executors of the Beloff Estate, Plaintiffs followed the directive in Hardie Beloff's will to sell artworks in the Beloff Estate. The primary beneficiaries of the Will are charities.

29.    Plaintiffs retained Maria Nevelson of Nevelson LLC to provide expert advice and assistance in selling the artworks in the Beloff Estate, including the Nevelson Wall Sculpture.

30.    Maria Nevelson, an art consultant whose office is in Philadelphia, is the founder of the Louise Nevelson Foundation, and the granddaughter of Louise Nevelson.

31.    In early March 2022, Maria Nevelson contacted Sotheby's auction house and Christie's auction house to discuss, *inter alia*, consigning the Nevelson Wall Sculpture for auction.

32.    On March 15, 2022, Maria Nevelson contacted Glimcher in his capacity as Chairman and Founder of Pace Gallery by email, to ask whether the Nevelson Wall Sculpture could be included in the upcoming Venice Biennale opening in April 2022, which was to include a major exhibition of over 60 Louise Nevelson artworks curated by Julia Bryan-Wilson, assisted

by Pace Gallery and Gio Marconi Gallery. Maria Nevelson informed Glimcher that she was working with the co-executors of the Beloff Estate and interviewing Christie's and Sotheby's, and stated that Sotheby's suggested that the artwork could be included in the 2022 Venice Biennale.

33.     Glimcher immediately, without any time to research or reflect on the Nevelson Wall Sculpture, including review his own appraisal of this artwork, responded to Maria Nevelson on March 15, 2022 by phone. He told her that the Nevelson Wall Sculpture was unfinished and could be a Mike Nevelson assemblage. He made it absolutely clear that he would tell any auction house that tries to sell it to back off. He warned Maria Nevelson he would make sure "it won't sell."

34.     On March 24, 2022, Maria Nevelson again spoke by phone with Glimcher. He told her that he did not remember the Nevelson Wall Sculpture, and that Louise Nevelson's assistant Diana McKown did not remember it either. Glimcher told Maria Nevelson that he would notify the auction houses that the artwork is not authentic.

**A.     Pace Gallery's Interference in the Beloff Estate's Contract with Sotheby's**

35.     On April 20, 2022, the Beloff Estate consigned the Nevelson Wall Sculpture to Sotheby's for auction, pursuant to a Consignment Agreement of that date (hereinafter, "the Consignment Agreement").

36.     Shortly thereafter, Sotheby's included the Nevelson Wall Sculpture in its catalogue for the May 20, 2022 Contemporary Art Day Auction. Sotheby's estimated value for the artwork was $500,000 to $700,000, and Sotheby's insured it for $700,000. Under the terms of the Consignment Agreement between the Beloff Estate and Sotheby's, the Beloff Estate was entitled to receive the "hammer price" at the auction and, in addition, a significant share of the buyer's premium Sotheby's received from the buyer above the hammer price, which is referred to in the Consignment Agreement as the "Consignment Fee."

37.     On May 4, 2022, Glimcher, on behalf of Pace, contacted Sotheby's regarding the

Nevelson Wall Sculpture, with the purpose and intent of causing Sotheby's to withdraw the artwork from its Contemporary Art Day Auction and otherwise not offer it for sale.

38.    At the time that Glimcher contacted Sotheby's he knew that there was a contract between Sotheby's and the Beloff Estate for the auction or other sale of the Nevelson Wall Sculpture by Sotheby's.

39.    Glimcher told Sotheby's that he and Diana McKown, Louise Nevelson's former assistant, "believe that the elements are by Louise Nevelson but that the arrangement is posthumously combined by her son Mike Nevelson."

40.    There was no basis for this gratuitous attack on Mike Nevelson, who died in 2019. Nor would there have been an economic incentive for Mike Nevelson to fabricate a sculpture in his mother's name so that it could be included in appraisals for the purpose of assessing federal taxes against the Nevelson Estate.

41.    Glimcher also told Sotheby's that "we are beginning the preparation of the catalogue raisonné, and I can guarantee you that this will not be in the catalogue raisonné." (Emphasis added).

42.    This statement was deliberately false and misleading. At the time Glimcher made the statement that he "guaranteed" that the Nevelson Wall Sculpture would not be included in "the catalogue raisonné" there was no catalogue raisonné nor catalogue raisonné committee in existence or in the process of formation associated with Pace Gallery for artworks by Louise Nevelson.

43.    On May 6, 2022, Maria Nevelson asked Talia Rosen, an employee of Pace Gallery who works with Glimcher, if Pace Gallery (or Glimcher) was preparing a catalogue raisonné of the artwork of Louise Nevelson. Talia Rosen said she was not aware of this.

44.    Under art industry standards for creating a catalogue raisonné of an artist's life

work, the impartial opinion of disinterested experts is required. Glimcher and other persons associated with Pace Gallery are not, under these standards, proper members of a catalogue raisonné committee for the artworks of Louise Nevelson because of their financial interest in Louise Nevelson artworks, described in Section B below.

45.    On May 12, 2022, Leslie Prouty, Senior Vice President for Contemporary Art at Sotheby's, notified Plaintiffs and Maria Nevelson by email that Sotheby's had withdrawn the Nevelson Wall Sculpture from the May 20, 2022 auction, and would not otherwise proceed with the auction or sale of this work. Leslie Prouty explained:

> I write to inform you that Sotheby's has received information that raises doubt as to the authenticity of the above-referenced item which the Estate of Hardy [sic] Beloff has consigned to Sotheby's Contemporary Day Sale to be held on May 20, 2022.
>
> Specifically, Arne Glimcher, the founder and director of Pace Gallery, which is considered the primary authority on Louise Nevelson's body of work, believes that the item consists of individual elements created by Louise Nevelson herself, but that those elements were posthumously combined by the artist's son and executor, Mike Nevelson, to form the sculpture in its current state. As a result, Mr. Glimcher has confirmed that this item will not be included in the catalogue raisonné of the artist's work which Pace Gallery is beginning to prepare.
>
> In light of Mr. Glimcher's expertise and the fact that the work will be excluded from Pace Gallery's forthcoming catalogue raisonné of the artist's work, we are unable to offer the item pursuant to our Conditions of Business and Authenticity Guarantee and therefore must withdraw the item from the sale.

46.    On August 23, 2022, Maria Nevelson sent the Beloff Estate's transparency (received directly from the Nevelson Estate) of the Nevelson Wall Sculpture to Glimcher. See Exhibit C. He replied on September 8, 2022 that "I don't recognize it as a work by Louise Nevelson."

47.    On information and belief, no one at Pace Gallery informed Sotheby's about the Glimcher/Pace Appraisal, including that this appraisal found the Nevelson Wall Sculpture was a finished, complete and valuable artwork by Louise Nevelson, and that it had been assembled by

Louise Nevelson.

**B.    Pace Gallery's Control of the Market for Louise Nevelson Artworks**

48.    Pace Gallery has a substantial financial interest in controlling the market for Louise Nevelson artworks for their own benefit and has engaged in a course of action to accomplish this objective to the detriment of lawful owners and even the Nevelson Estate and related rightsholders.

49.    For many years Pace Gallery has been the largest single seller of Louise Nevelson artworks, primarily through purchase or consignment from Louise Nevelson or her related corporate entity, Sculptotek, or the Nevelson Estate.

50.    In 2005, Pace Gallery was the principal purchaser among three galleries of almost all of the remaining artworks in the Nevelson Estate. The purchase included approximately 1500 artworks by Louise Nevelson. Upon information and belief, Pace Gallery continues to own many of these artworks.

51.    On information and belief, the artworks purchased from the Nevelson Estate by Pace Gallery in 2005 included some of the box and wall constructions listed in Section II, page 1, of the Glimcher/Pace Appraisal, and Pace Gallery did not and does not have photographs of these artworks before their removal from the residence/studio of Louise Nevelson after her death. Accordingly, on information and belief, Pace Gallery and other purchasers of these artworks relied on the photographs in the O'Toole-Ewald appraisal.

52.    Pace Gallery continues to actively exhibit Louise Nevelson artworks for the purpose of sale and to otherwise promote Louise Nevelson artworks for its own economic gain.

53.    The Nevelson Wall Sculpture has never passed through the Pace Gallery on consignment, exhibition or sale. A sale of the Nevelson Wall Sculpture by the Beloff Estate at a Sotheby's auction would not have provided any financial benefit to Pace Gallery.

54.    Nothing has changed from the date of the Glimcher/Pace Appraisal in 1993 to the

present which would support Pace Gallery's reversing its own clear determination that the Nevelson Wall Sculpture is a complete artwork of substantial value assembled by Louise Nevelson. Pace Gallery reversed its position in 2022 because the marketing of the artwork was not done through Pace Gallery, and Pace Gallery insists on controlling the market for Nevelson works.

55.    In 1993, Glimcher/Pace found that, unlike the Nevelson Wall Sculpture, four of the ten box and wall constructions listed in the Glimcher/Pace Appraisal at section II, page 1 were "incomplete" and had "no aesthetic merit" and were not "assembled by Mrs. Nevelson into 'walls'". See Exhibit B at Page 1, Box and Wall Constructions, at #30004, #30007, #30009, and #30010. One of these artworks – #30004 – was subsequently acquired by Pace Gallery and exhibited as a Louise Nevelson artwork by Pace Gallery in 2019. In publicly promoting the exhibition, Pace Gallery described the artwork as "striking" with "an absorbing visual complexity marked by fluctuating depths, straight lines and curves, overlaps and vacancies … likened to the faceting of Cubism." With respect to both #30004 and #30007, Pace Gallery collaborated in including these works as Nevelson artworks in Germano Celant's monograph titled "Louise Nevelson," published in 2013. On information and belief, both #30004 and #30007 were purchased from the Nevelson Estate as described in paragraph 50, above.

56.    Pace Gallery has advertised itself for many years to the present as representing Louise Nevelson. Upon information and belief, this has not been true at least since the time of her death. Pace Gallery has never represented or otherwise had authority to act for the Nevelson Estate.

57.    Pace Gallery has falsely held itself out as having the authority of a duly constituted raisonné committee or otherwise as having authority to decide which artworks of Louise Nevelson will be included in an authoritative raisonné of her life's work.

58.    At least since the time of Louise Nevelson's death, Pace Gallery has intentionally

misrepresented itself as acting with authority from Louise Nevelson, in order to control the market and obtain maximum financial benefit for Pace Gallery from the artworks of Louise Nevelson.

59.     The success of this strategy is demonstrated in this case, wherein Sotheby's withdrew the Nevelson Wall Sculpture from auction or further sale in spite of Hardie Beloff having purchased the artwork directly from the Nevelson Estate, without any question of authenticity having been raised in two Estate appraisals and, to the contrary, authenticity having been confirmed by a certificate from the Nevelson Estate's executor. The history of the Beloff Estate's subsequent attempts to consign, sell or auction the Nevelson Wall Sculpture set forth below further confirms the extent of Pace Gallery's manipulative market control.

**C.    Pace Gallery's Interference in the Beloff Estate's Prospective Contracts with Other Galleries, Auction Houses, and Prospective Buyers of the Nevelson Wall Sculpture**

60.     After Sotheby's withdrew the Nevelson Wall Sculpture from auction and declined to offer it for future auction or sale, Plaintiffs, through Maria Nevelson LLC, sought alternate sale options.

61.     Accordingly, in September, 2022 Maria Nevelson contacted Nora Haime Gallery, Michael Rosenfeld Gallery, Yarger Fine Arts Gallery, and independent art consultant Joyce Pomeroy Schwartz regarding the Nevelson Wall Sculpture.

62.     All of these communications were made from Philadelphia, Pennsylvania.

63.     Plaintiffs made or caused to be made disclosures to each of these persons and entities concerning the "authenticity" objections which Pace Gallery made to the sale of the Nevelson Wall Sculpture and the resulting withdrawal of the Nevelson Wall Sculpture from the Sotheby's auction.

64.     Each of the third parties contacted regarding potential sale of the Nevelson Wall Sculpture either expressly stated that they were not interested in the Nevelson Wall Sculpture

based on Pace Gallery's objections, or after being told about Pace Gallery's objections declined to consider further the Nevelson Wall Sculpture without express explanation.

65.     In September, 2022, Gio Marconi of the Gio Marconi Gallery contacted Maria Nevelson about available sculptures. When Maria told him about the objections raised by Pace Gallery, the Gio Marconi Gallery declined to consider the Nevelson Wall Sculpture.

66.     On October 24, 2022, Jeffrey Fuller, a private art dealer in Philadelphia, Pennsylvania contacted Maria Nevelson about available sculptures. As an initial matter, Maria Nevelson made full disclosure concerning the actions taken by Pace Gallery resulting in the withdrawal of the Nevelson Wall Sculpture from auction or other sale at Sotheby's. Mr. Fuller located a prospective purchaser. Subsequently, viewings with Mr. Fuller and/or his prospective buyer of the Nevelson Wall Sculpture took place at Atelier in Philadelphia on November 2, 2022 and November 15, 2022, and the buyer wished to move ahead. A price of $375,000 was agreed upon, reflecting the cloud on the Nevelson Wall Sculpture created by Pace Gallery. A contract was prepared.

67.     The buyer, before proceeding further, contacted Pace Gallery, and was told by Marc Glimcher, current President of Pace Gallery and Glimcher's son, not to touch the Nevelson Wall Sculpture. As a result, the buyer did not execute the agreement and withdrew from the transaction.

68.     In September, 2023, Maria Nevelson contacted Phillips Auction House concerning the Nevelson Wall Sculpture. On or about October 4, 2023, Phillips informed Ms. Nevelson that because of the objection by Pace Gallery they would not consider auctioning the Nevelson Wall Sculpture.

69.     No one at Pace Gallery informed any of the persons or entities to whom they expressed objection and/or questioned authenticity that Pace Gallery had appraised the Nevelson

Wall Sculpture in 1993 and found that it was a complete and finished work by Louise Nevelson, it had been assembled by Louise Nevelson, and it had substantial value.

70.    As a result of the foregoing actions by Pace Gallery, Plaintiffs' efforts to sell the Nevelson Wall Sculpture have not been successful. The artwork remains stored in Philadelphia at Atelier Fine Art Services.

71.    As a result of the market control Pace Gallery has obtained through its misrepresentations and manipulative conduct, as set forth above, auction houses, galleries and private purchasers will not engage in transactions concerning artworks by Louise Nevelson without the approval or non-objection of Pace Gallery.

72.    All actions by Glimcher and Marc Glimcher described herein were taken as authorized representatives of Pace Gallery, including as Founder, Chairman and, depending on the time, President.

## COUNT ONE
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

73.    Plaintiffs incorporate the allegations in paragraphs 1 through 72 above.

74.    Plaintiffs and Sotheby's had a contractual relationship, pursuant to which Sotheby's agreed to auction the Nevelson Wall Sculpture in the May 20, 2022 Contemporary Art Day Auction.

75.    Pace Gallery acted with the intent and purpose to harm, and ultimately destroy, the contractual relationship between Plaintiffs and Sotheby's by contacting Sotheby's and falsely representing that the Nevelson Wall Sculpture was not authentic, by falsely representing that an authoritative catalogue raisonné of Louise Nevelson artworks was being prepared which would not include the Nevelson Wall Sculpture, and by failing to disclose that it had appraised the Nevelson Wall Sculpture in 1993 and found that it was a complete and finished work by Louise

Nevelson which had substantial value.

76.     Pace Gallery knew and intended that its interceding directly with Sotheby's would cause Sotheby's to withdraw the Nevelson Wall Sculpture from auction and destroy the value of this artwork going forward.

77.     Pace Gallery's interference in the contractual relationship between Plaintiffs and Sotheby's was malicious, motivated by their own self-interest, and recklessly indifferent to and in deliberate disregard of Plaintiffs' right to sell the Nevelson Wall Sculpture under its contract with Sotheby's.

78.     Pace Gallery was not privileged or justified in the actions which it took to cause Sotheby's to withdraw the Nevelson Wall Sculpture from auction.

79.     Plaintiffs suffered actual legal damage as a result of Defendants' interference, because Defendants' acts caused Sotheby's to remove the Nevelson Wall Sculpture from the May 20, 2022 auction approximately one week before the auction date, after the artwork was included in Sotheby's catalogue for the auction, and have rendered the Nevelson Wall Sculpture unmarketable.

WHEREFORE, Plaintiffs Richard L. Bazelon and Jonathan D. Sokoloff, as Co-Executors of the Estate of Hardie Beloff, respectfully request that:

a.      the Court enter judgment on Plaintiffs' Count One in favor of Plaintiffs and against Defendants Pace Gallery of New York, Inc. and Pace Gallery, LLC, for compensatory damages in an amount in excess of $1 million, to include a reasonable estimate of the hammer price at the scheduled auction by Sotheby's, the Consignment Fee, costs incurred in subsequent efforts to market the Nevelson Wall Structure, and other costs and losses incurred as a result of the Nevelson Wall Sculpture being withdrawn from

auction;

        b.    the Court award punitive damages to Plaintiffs for Defendants' outrageous, reckless and willful conduct; and

        c.    the Court award Plaintiffs pre-judgment interest, costs, and such other relief as this Court may deem just.

**COUNT TWO**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS**

80.    Plaintiffs incorporate the allegations in paragraphs 1 through 79 above.

81.    Plaintiffs had prospective contractual relationships with multiple galleries, art consultants, auction houses, and prospective buyers of the Nevelson Wall Sculpture, including, without limitation, Nora Haime Gallery, Michael Rosenfeld Gallery, Yarger Fine Arts Gallery, Joyce Pomeroy Schwartz, Gio Marconi Gallery, Jeffery Fuller, and Phillips, for the sale and/or auction of the artwork, after Sotheby's removed the Nevelson Wall Sculpture from the May 20, 2022 auction.

82.    Plaintiffs would have entered into a contractual relationship with one or more of the multiple galleries, art consultants, auction houses, and prospective buyers for the auction or sale of the Nevelson Wall Sculpture, but for the outrageous and reckless actions taken by Pace Gallery described herein.

83.    Pace Gallery's interference in the prospective contractual relationships between Plaintiffs and the galleries, art consultants, auction houses, and prospective buyers of the Nevelson Wall Sculpture was not privileged or justified.

84.    Plaintiffs suffered actual legal damage as a result of Pace Gallery's interference, because Pace Gallery's false assertions concerning the authenticity of the artwork caused the galleries, art consultants, auction houses, and prospective buyers of the Nevelson Wall Sculpture

15

to decline to enter into contractual relationships with Plaintiffs, and have rendered the Nevelson Wall Sculpture unmarketable.

85.    Pace Gallery's interference in the prospective contractual relationships between Plaintiffs and the galleries, art consultants, auction houses, and prospective buyers of the Nevelson Wall Sculpture was malicious and recklessly indifferent to and in deliberate disregard of Plaintiffs' rights to negotiate and contract for the sale or auction of the Nevelson Wall Sculpture.

WHEREFORE, Plaintiffs Richard L. Bazelon and Jonathan D. Sokoloff, as Co-Executors of the Estate of Hardie Beloff, respectfully request that:

a.    the Court enter judgment on Plaintiffs' Count Two in favor of Plaintiffs and against Defendants Pace Gallery of New York, Inc. and Pace Gallery, LLC, for compensatory damages in an amount in excess of $1 million;

b.    the Court award punitive damages to Plaintiffs for Defendants' outrageous, reckless and willful conduct; and

c.    the Court award Plaintiffs pre-judgment interest, costs and such other relief as this Court may deem just.

*/s/ Richard L. Bazelon*
Richard L. Bazelon, Esq.
PA ID No. 02505
rbazelon@bazless.com
Lisa A. Barton, Esq.
PA ID No. 78139
lbarton@bazless.com
BAZELON LESS & FELDMAN, P.C.
123 South Broad Street, Suite 1850
Philadelphia, PA 19109
(215) 568-1155

April 22, 2024

# EXHIBIT A



Louise Nevelson   h 86" x w 108 ¾" x d 13 ½"   # 3000 bLN

# EXHIBIT B

# THE PACE GALLERY

**ESTATE OF LOUISE NEVELSON**

Fair market value appraisal of works by

Louise Nevelson at date of death (April 17, 1988)

by Arnold B. Glimcher, President

July 8, 1993

Total Value $1,283,576

2 EAST 57TH STREET/NEW YORK, NEW YORK 10022/PHONE: (212) 421-3292/FAX: (212) 421-0835

# THE PACE GALLERY

I have reviewed the appraisals of certain works by Louise Nevelson prepared by O'Toole-Ewald Art Associates, Inc. and by the Art Advisory Panel of The Commisioner of the Internal Revenue Service.

I have also seen the works appraised or photographs of the works or am fully familiar with the works.  Based on my knowledge of the market for the works of Louise Nevelson as of April 17, 1988, the date of her death, I have determined that the fair market value of the works in question on the valuation date was $1,283,576 ($7,588,576 before applying blockage discounts and $1,283,576 after applying appropriate blockage discounts).

In applying blockage discounts, I have considereed the market for the artist's works in each category, the principles of blockage discount set forth in the David Smith, Alexander Calder and Georgia O'Keeffe cases, the length of time it would take to sell these works and the discounted amount a potential purchaser would pay if all of the works in a particular category were sold in bulk.

I have appraised the works using the same categories used by the Art Advisory Panel.  Reference should be made to the O'Toole-Ewald appraisal and the Art Advisory Panel appraisals for reproductions of the works and information about sales of other works by the artist.

Arnold B. Glimcher
July 8, 1993

EAST 57TH STREET NEW YORK, NEW YORK 10022/PHONE: (212) 421-3292/FAX: (212) 421-0835

-1-

Nevelson Date of Death Appraisal
Page 1, Box and Wall Constructions

## II. BOX AND WALL CONSTRUCTIONS

| Inventory # | Dimensions | Appraised Value |
|---|---|---|
| 30001 | 74 X 45 X 28" | 40,000 |
| 30002 | 99 X 104 X 27" | 100,000 |
| 30004 | 74 X 126 X 11" | Incomplete |
| 30005 | 84 X 98 X 19" | 100,000 |
| 30006 | 86 X 108 X 13" | 85,000 |
| 30007 | 84 X 192 X 11" | Incomplete |
| 30008 | 64 X 88 X 12" | $85,000 |
| 30009 | 78 X 80 X 17" | Incomplete |
| 30010 | 84 X 104 X 11" | Incomplete |
| 30012 | 100 X 130 X 19" | 125,000 |
| Total | | $  535,000 |

The gold wall, #3008, is a work of mediocre quality and as such not comparable to Royal Tide III so it cannot be given a similar value. While its composition is unique it works against the desirability of this work because it does not fit into the signature style of the period. I have placed no value on works which are simply a series of same size boxes stacked together for storage purposes rather than assembled by Mrs. Nevelson into "walls". They are incomplete in my opinion and have no aesthetic merit. Attached is a photograph of a same-size element wall, Black Garden Wall I from 1971, which illustrates the kind of dynamic composition a completed Nevelson sculpture should have. The rest of the sculptures are of mediocre quality.

# EXHIBIT C

