## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD L. BAZELON | : | |
| | : | |
| *Plaintiff(s)* | : | |
| | : | |
| v. | : | CIVIL NO. 24-1686 |
| | : | |
| PACE GALLERY OF NEW YORK, INC. | : | |
| | : | |
| Defendant(s) | : | |

## MEMORANDUM OF LAW

Plaintiffs Richard Bazelon and Jonathan Sokoloff ("Plaintiffs") filed their Complaint against Pace Gallery of New York, Inc. and Pace Gallery LLC ("Defendants"). The Complaint alleged two intentional torts: tortious interference with contractual relations and tortious interference with prospective contractual relationships. Pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Defendants' motion to dismiss is (i) denied for lack of personal jurisdiction, (ii) denied for Plaintiffs' claim of tortious interference with contractual relations, and (iii) granted for Plaintiffs' claim of tortious interference with prospective contractual relationships.

### I.     Factual Background.

In 1996, Hardie Beloff purchased a piece of artwork (the "Sculpture") from the Louise Nevelson estate. ECF No. 1 ¶ 23 [hereinafter "Compl."]. In March 2022, Maria Nevelson—art consultant and Louise Nevelson's granddaughter—contacted Sotheby's and Christie's auction houses on behalf of the co-executors of Hardie Beloff's Estate, the Plaintiffs in this case. *Id.* ¶¶ 29-31. That same month, Nevelson contacted then Pace Gallery President, Arnie Glimcher, to feature the Sculpture in an art opening. *Id.* ¶ 32. Glimcher responded to Nevelson's inquiry by phone, contesting the Sculpture's authenticity and stating that he would tell auction houses not to

1

sell the Sculpture. *Id.* ¶¶ 33-34.

In the following month, the Beloff Estate had contracted with Sotheby's to auction off the Sculpture. *Id.* ¶¶ 35-36. Glimcher then called Sotheby's, unsolicited, and stated that he believed the Sculpture was inauthentic and arranged posthumously by Louise Nevelson's son, and that it would not be included in Pace Gallery's forthcoming catalogue raisonné—which is a comprehensive listing of all known works of an artist. *Id.* ¶¶ 39-41. Plaintiffs alleged that Glimcher deliberately lied because "there was no catalogue raisonné nor catalogue raisonné committee in existence or in the process of formation associated with Pace Gallery for artworks by Louise Nevelson." Compl. ¶ 42. According to Plaintiffs, Talia Rosen—a Pace Gallery employee—said she was not aware of a forthcoming Louise Nevelson catalogue raisonné. Compl. ¶ 43. Thereafter, Sotheby's notified Plaintiffs that the Sculpture would not be featured in the auction because of Glimcher's opinion on the Sculpture's authenticity. Id. ¶ 45. Afterward, Nevelson sent Glimcher the Sculpture's transparency, to which he replied that he still did not think the Sculpture was authentic. *Id.* ¶ 46.

After Sotheby's dropped the Sculpture from its auction, Plaintiffs contacted other auction houses and art dealers, and eventually found a prospective buyer. *Id.* ¶¶ 60-66. Before proceeding with the sale, the prospective buyer contacted current Pace Gallery President, Marc Glimcher (Arnie Glimcher's son). *Id.* ¶ 67. Marc Glimcher told the prospective buyer "not to touch the [Sculpture]." *Id.* The prospective buyer did not purchase the Sculpture. *Id.* This lawsuit ensued, and Plaintiffs allege (i) tortious interference with contractual relations and (ii) tortious interference with prospective contractual relationships.

## II.    Rule 12(b)(2): Lack of Personal Jurisdiction.

A defendant may move to dismiss a claim for lack of personal jurisdiction. FED. R. CIV.

P. 12(b)(2). Plaintiffs are burdened with establishing personal jurisdiction with "reasonable particularity." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff . . . ."); *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.3d 1217, 1223 (3d Cir. 1992). This Court accepts all of Plaintiffs' allegations as true and construes disputed facts in favor of Plaintiffs. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir.2003). However, Plaintiffs must still demonstrate personal jurisdiction over Defendants through "affidavits or other competent evidence" if the pleadings insufficiently do so. *Metcalfe*, 566 F.3d at 330.

A court sitting in diversity "typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction to the "fullest extent allowed by the Constitution." 42 Pa. Cons. Stat. § 5322. The Fourteenth Amendment's Due Process Clause requires that Defendants "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945).

There are two separate avenues to establishing personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor*, 496 F.3d at 317. Neither party here alleged general jurisdiction. On the other hand, specific jurisdiction exists if (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks and citations omitted).

3

The U.S. Supreme Court has also endorsed a separate test for intentional tort claims, which requires "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998); *Calder v. Jones*, 465 U.S. 783 (1984). The Third Circuit stated in *IMO* that "*Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry focuses on the relations among the defendant, the forum, and the litigation." *IMO*, 155 F.3d at 265 (internal quotation marks omitted); *Id.* ("Nor did *Calder* carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state."); *see also Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007) ("[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants.").

The Third Circuit has not stated whether the traditional test or the *Calder* effects test exclusively applies when assessing personal jurisdiction for intentional tort claims. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 189-90 (3d Cir. 2024). In any event, this Court finds that Plaintiffs have at least established personal jurisdiction under the *Calder* effects test.

Plaintiffs rely on six arguments to establish personal jurisdiction:

1. Plaintiffs argued that Pace Gallery (in New York) had directed activities into Pennsylvania for decades, including communications with Hardie Beloff (in Pennsylvania) and Pennsylvania-based galleries. ECF No. 18 at 10 [hereinafter "Plaintiffs' Reply"]. Specifically, Pace Gallery regularly emailed Beloff notifications of upcoming art exhibits, and, in 1977 invited him to an exhibition. *Id.* at 4.

4

2.  On March 15, 2022, Arnie Glimcher (in New York) called Maria Nevelson (in Pennsylvania) in response to her email to Pace Gallery, requesting that the Sculpture be included in Pace Gallery's "2022 Venice Biennale." Pls.' Resp. at 10. According to Plaintiffs, Glimcher "asserted that the [Sculpture] was unfinished and could be an assemblage by Mike Nevelson, and warned Ms. Nevelson that he would interfere in any attempts to sell the [Sculpture] and would make sure that it would not sell." *Id.*

3.  On March 24, 2022, Glimcher (in New York) spoke with Nevelson (in Pennsylvania) again over the phone, though the Complaint does not make clear who called who. Compl. ¶ 34. Glimcher told her that he did not recall ever knowing of the Sculpture and would notify auction houses it was inauthentic. *Id.*

4.  On May 4, 2022, Glimcher (in New York) called Sotheby's (in New York) stating that he believed the Sculpture was not arranged by Louise Nevelson. Pls.' Resp. at 5.

5.  On August 23, 2022, Nevelson (in Pennsylvania) sent a transparency of the Sculpture to Glimcher (in New York). *Id.* at 7. Glimcher responded via email on September 8, 2022, that he didn't recognize it as authentic. *Id.*

6.  In November 2022, a prospective buyer (in Pennsylvania) of the Sculpture called Pace Gallery (in New York). Pls.' Resp. at 12. Marc Glimcher (in New York) told the prospective buyer "not to touch the Nevelson Wall Sculpture." *Id.* at 7.

In response to Plaintiffs' first argument, Defendants explained that Pace Gallery's business in Pennsylvania is a minuscule fraction of its business overall. ECF No. 13 at 4 [hereinafter "Defs.' Mot."] ("In fact, this year to date, only approximately nine ten thousandths of Pace Gallery's revenue (.09%) is tied to sales of artwork in Pennsylvania."). Moreover, Plaintiffs' argument about Pace Gallery's overall business contacts with Pennsylvania is related

to general jurisdiction, which Plaintiffs did not argue in their briefing. In addition, none of the alleged contacts with Hardie Beloff are related to the alleged claims and cannot form a basis for specific jurisdiction. ECF No. 22 at 3 [hereinafter "Defs.' Reply"].

      With respect to arguments two, five, and six, Defendants correctly argued that these pieces of evidence do not qualify as Pace Gallery purposefully directing its activity into Pennsylvania because, in each instance, Pace Gallery was *responding* to communications directed at it from individuals in Pennsylvania. Defs.' Mot. at 11-13; *see Weinberg v. Legion Athletics, Inc.*, 683 F. Supp. 3d 438, 447 (E.D. Pa. 2023) ("[I]t is well established that '[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state . . . [i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum'"); *see also Booker v. Twp. of Cinnaminson*, 2012 WL 4791126, at *2 (E.D. Pa. Oct. 5, 2012) (finding no purposeful availment where a non-Pennsylvanian defendant responded to a Pennsylvania plaintiff's communications).

      For argument three, Plaintiffs have not adequately pleaded that Glimcher purposefully directed his conduct into Pennsylvania because the Complaint does not make clear who called who. It is Plaintiffs' burden to establish personal jurisdiction with reasonable particularity.

      However, Plaintiffs' fourth argument does serve as a basis for specific jurisdiction under the *Calder* effects test. Plaintiffs submitted a Notice of Supplemental Authority of the Third Circuit non-precedential opinion *The Weiser Law Firm, P.C. v. Michael Hartlieb*, which informs this decision. ECF No. 28; No. 23-1889, 2024 WL 5219737 (3d Cir. Dec. 26, 2024). In *Weiser*, an attorney and his law firm, both located in Pennsylvania, sued a California defendant. *Weiser Law Firm*, 2024 WL 5219737, at *1. The Court found that the defendant's conduct outside

Pennsylvania was aimed at injuring the plaintiffs in the state of Pennsylvania. *Id.*, at *6. The defendant, who had prior disagreements with the plaintiffs, accused the plaintiffs of misleading the court in an email to the plaintiff, eleven other attorneys, and the administrative assistant in the case that the plaintiff was trying. *Id.* The defendant sent another email to the plaintiff's client, fifteen other attorneys, and the court administrative assistant, accusing the plaintiff and his law firm of fraud and criminal conduct. *Id.* The defendant stated in emails that his actions against the plaintiff were his personal "quest." *Id.*

Here, Defendants' conduct outside of Pennsylvania was aimed at triggering consequences in Pennsylvania. Plaintiffs alleged in the Complaint that Glimcher made an unsolicited phone call to Sotheby's. Compl. ¶ 37. He claimed that the Sculpture was inauthentic and that the Sculpture would not be featured in Pace Gallery's forthcoming "catalogue raisonné," though Plaintiffs claim there was no catalogue "in the process of formation associated with Pace Gallery for artworks by Louise Nevelson." *Id.* ¶¶ 41-42. Six days later, Sotheby's withdrew the Sculpture from the auction. *Id.* ¶ 45. Defendants asserted that "there are no alleged communications that are directly related to Plaintiffs' tortious interference claims and that show Defendants' actions were expressly aimed at injuring Plaintiffs or were otherwise intended to harm a Pennsylvania-based person or entity." Defendants' Resp. at 3 (ECF No. 30). But as in *Weiser*, where the defendant's unsolicited emails outside of Pennsylvania were aimed at targeting the plaintiffs inside Pennsylvania, in the instant matter, Glimcher's unsolicited phone call to Sotheby's in New York sought to prevent the Estate's sale of the Sculpture. "In doing so, [Glimcher] directed his actions toward triggering consequences in the forum for [Plaintiffs]. *Weiser Law Firm*, 2024 WL 5219737, at *6. And similar to the defendant's personal "quest" in *Weiser*, Glimcher allegedly said in other communications that he would make sure the Sculpture "won't sell," evidencing

Glimcher's intent to target Pennsylvania when he made his phone call to Sotheby's in New York. Compl. ¶ 33. Thus, the the third element of the *Calder* effects test is satisfied. As for the second element, Plaintiffs have specifically averred that the Estate and Sculpture are in Pennsylvania, Defendants knew they were in Pennsylvania, and thus the brunt of the harm of Defendants' phone call to Sotheby's was felt in Pennsylvania. In sum, all three prongs of the *Calder* effects test are met.

**III.    Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can be Granted.**

Plaintiffs' claim of tortious interference with contractual relations survives the motion to dismiss phase, but their claim of tortious interference with prospective contractual relationships does not. A defendant may move to dismiss a lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiffs] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court accepts Plaintiffs' allegations in their Complaint and makes reasonable inferences based on the facts, in the light most favorable to Plaintiffs. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). This Court need not accept legal conclusions and conclusory statements in Plaintiffs' Complaint. *Id.* Looking to the record, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Id.*

**a.    Tortious Interference with Contractual Relations.**

Plaintiffs' claim of tortious interference with contractual relations survives a motion to dismiss. In Pennsylvania, the elements of tortious interference with contractual relations are:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000). Here, Plaintiffs and Sotheby's contracted to consign the Sculpture to Sotheby's for auction, and Plaintiffs were damaged because Sotheby's withdrew the Sculpture from auction and the Sculpture still has not been sold to this day. Compl. ¶¶35-36, 45, 70. Thus, at issue here are elements two and three, whether Defendants' actions were specifically intended to harm Plaintiffs' contract with Sotheby's and whether Plaintiffs have shown a lack of privilege or justification.

The intent element is satisfied if a defendant (i) knows of the existing contract, (ii) acts improperly, and (iii) knows that their interference is substantially certain to interfere with the contract. *Leonard A. Feinberg, Inc. v. Cent. Asia Cap. Corp.,* 974 F. Supp. 822, 846 (E.D. Pa. 1997). The Supreme Court of Pennsylvania has explained that "absence of privilege or justification . . . is closely related to the element of intent." *Glenn v. Point Park Coll.*, 441 Pa. 474, 482 (1971). Thus, acting without privilege or justification can indicate a defendant's specific intent to interfere with a contract. There is no precise definition for what constitutes "privilege" or "justification" in the context of an intentional interference with contractual relations claim. Courts will generally determine whether a defendant's conduct was improper based on whether the conduct violated the "rules of the game" that society has adopted. *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 673 (3d Cir. 1991).

Here, Plaintiffs sufficiently alleged that Defendants knew of the Sotheby's

9

consignment contract, contacted Sotheby's regarding the Sculpture, and described the Sculpture as inauthentic. Compl. ¶ 38-39. Defendants argued that Arnie and Marc Glimcher's statements are non-actionable because they were merely opinions about the artwork's authenticity. Defs.' Mot. at 21-22. Furthermore, Defendants averred that Plaintiffs have not shown an absence of privilege because Defendants acted in their "own legitimate economic and business interests" by trying to protect the integrity and legitimacy of the Nevelson art market. *Id.* at 22-23. But as Plaintiffs aptly summed it up, a defendant's economic interests in the subject of a plaintiff's contractual relationship with a third party does not give a defendant *carte blanche* to interfere, in whatever way it wants, with that contract. Pls.' Resp. at 22. Despite Defendants' contrary assertion, Plaintiffs did in fact allege that Glimcher made a "deliberately false and misleading" statement to Sotheby's that he was not going to feature the Sculpture in Pace Gallery's forthcoming catalogue raisonné, even though "there was no catalogue raisonné nor catalogue raisonné committee in existence or in the process of formation associated with Pace Gallery for artworks by Louise Nevelson." Compl. ¶ 42; *contra* Defs.' Reply at 9 ("Unlike *Warman v. Local Yokels Fudge, LLC*, 2021 WL 75267 (W.D. Pa. Jan. 8, 2021), the Beloff Estate has not alleged that Glimcher knowingly made any false statements."). Plaintiffs' allegation of Glimcher's lie is not baseless, given that a Pace Gallery employee who worked with Glimcher said she was not aware of such a catalogue being prepared. Compl. ¶ 43. At the motion to dismiss stage, this Court must take Plaintiffs' factual assertions as true. Consequently, evidence that Glimcher lied about a forthcoming catalogue supports a finding that he plausibly intended to interfere with Sotheby's and Plaintiffs' contract without privilege or justification. *Stevens v. Sullum*, No. CV 3:20-

1911, 2021 WL 2784817 (M.D. Pa. July 2, 2021) at *15 (denying a motion to dismiss based on the defendant's intentional misrepresentation of facts and finding that the plaintiff had "sufficiently pled facts to support a claim for tortious interference").

Defendants accurately stated that Pace Gallery, as a foremost authority in Nevelson artworks, is certainly permitted by the art world's "rules of the game" to express its opinion. Defs.' Reply at 9. That is why this Court has not found improper contractual interference for the many instances when Pace Gallery expressed its opinion about the Sculpture's authenticity. See Compl. ¶ 33 ("[Glimcher] told [Maria Nevelson] that the Nevelson Wall Sculpture was unfinished and could be a Mike Nevelson assemblage."); Compl. ¶ 34 ("Glimcher told Maria Nevelson that he would notify the auction houses that the artwork is not authentic."); Compl. ¶ 39 ("Glimcher told Sotheby's that he and Diana McKown, Louise Nevelson's former assistant, 'believe that the elements are by Louise Nevelson but that the arrangement is posthumously combined by her son Mike Nevelson.'"); Compl. ¶ 67 (Marc Glimcher told the prospective buyer "not to touch the Nevelson Wall Sculpture"). And there was no factually supported evidence demonstrating that Pace Gallery did not sincerely hold its view that the Sculpture was inauthentic.[1] However, Plaintiffs' assertion that Glimcher lied about a forthcoming Nevelson catalogue—which would not include the Sculpture—is not merely an artistic opinion regarding authenticity, but it is indicative of Defendants' intent to use its market prowess improperly to prevent the Sculpture's listing in Sotheby's auction.

---

[1] Plaintiffs alleged that a 1993 appraisal by Arnie Glimcher of several Nevelson artworks, including the Sculpture, demonstrates that Arnie and Marc Glimcher later falsely contested the Sculpture's authenticity given that Arnie Glimcher had previously concluded in 1993 "that the Nevelson Wall Sculpture was a complete wall assemblage by Louise Nevelson." Pls.' Resp. at 5. But as Defendants explained, Glimcher does not make any certifications about the Sculpture's authenticity in the 1993 appraisal document. Defs.' Mot. at 21, n.6. Thus, there is no evidence to support the allegation that Pace Gallery falsely contested the Sculpture's authenticity with knowledge that its protests were indeed false.

If Glimcher had been telling the truth about a forthcoming Louise Nevelson catalogue raisonné, which this Court must assume the opposite, then no improper intent could be inferred. It is proper for art galleries to give their truthful and honest opinions, even if ultimately factually incorrect, on the legitimacy of an artwork. However, this does not give art galleries or experts a license to fabricate lies to support their assessment of an artwork's authenticity—such an act could plausibly indicate an improper intent to interfere with a contractual relation. *See Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 2016 PA Super 244, 964 (2016) ("[A]lthough the American economic and legal systems place tremendous value upon, and seek to safeguard, a person's right to 'compete or protect his business interests in a fair and lawful manner,' the tort of interference with contractual relations 'draws a line beyond which an individual may not go in intentionally interfering with the business affairs of others.'"). Therefore, Plaintiffs' allegation that Glimcher lied to Sotheby's about excluding the Sculpture from a forthcoming Louise Nevelson catalogue raisonné indicates that Defendants had specific intent to interfere with the contract and did so without privilege or justification. At the motion to dismiss stage, Plaintiffs have plausibly stated a claim of intentional interference with contractual relations.

### b. Tortious Interference with Prospective Contractual Relationships.

Plaintiffs' claim of intentional interference with prospective contractual relationships does not survive Defendants' motion to dismiss. The elements of the claim are:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable

12

likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). "A 'reasonable likelihood' of occurrence is something less than a contractual right but more than a mere hope that there will be a future contract." *Id.* at 213.

Plaintiffs alleged that "art dealers and auction houses with whom Maria Nevelson was in communication were prospective buyers." Pls.' Resp. at 25. The art dealers or auction houses "expressly stated that they were not interested in the [Sculpture] based on Pace Gallery's objections, or after being told about Pace Gallery's objections . . . ." Compl. ¶ 64. In addition, Plaintiffs had prepared a contract for the Sculpture's sale with a prospective buyer, which included a date and purchase price. Pls.' Resp. at 24. Only the latter qualifies as more than a mere hope of a future contract.

But unlike the previous claim, Plaintiffs have failed to allege adequately specific intent by the Defendants to improperly interfere with the prospective buyer's contract. The prospective buyer, of his own volition, called Pace Gallery before signing the contract to purchase the Sculpture. Compl. ¶ 67. Marc Glimcher told the prospective buyer "not to touch the [Sculpture]." *Id.* But as stated above, it is not improper for an art gallery to give its honest opinion about an artwork's authenticity, especially if solicited for its opinion. Therefore, Defendants' motion is granted with respect to Plaintiffs' claim of intentional interference with prospective contractual relationships.

## IV.    Conclusion.

Defendants' motion to dismiss is (i) denied as to lack of personal jurisdiction, (ii) denied as to Plaintiffs' claim of tortious interference with contractual relations, and (iii) granted as to Plaintiffs' claim of tortious interference with prospective contractual relationships.

13

BY THE COURT:

_____

**HONORABLE KAI N. SCOTT**
**United States District Court Judge**